(No. 31543.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RALPH QUEVREAUX *et al.*, Plaintiffs in Error.

*Opinion filed September 21, 1950—Rehearing denied Nov. 17, 1950.*

JAMES H. BANDY, and McROBERTS & HOBAN, both of East St. Louis, for plaintiffs in error; and RALPH QUEVREAUX, *pro se,* on rehearing.

IVAN A. ELLIOTT, Attorney General, of Springfield, and RICHARD T. CARTER, State's Attorney, of Belleville, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

Plaintiffs in error, Ralph Quevreaux, Arthur Hines and Marcus LeRoy, seek review of a judgment of the circuit court of St. Clair County, convicting them of the crime of rape. The punishment of Ralph Quevreaux was fixed at fifteen years in the penitentiary, and that of each remaining defendant was fixed at ten years in the penitentiary.

The evidence discloses that at about nine o'clock on the evening of June 3, 1949, the prosecuting witness, a girl sixteen years of age, and three other young women

went for an automobile ride with the defendants and a young man named Donald Frawley. They drove from East St. Louis to a resort several miles to the south known as Falling Springs, Illinois, where they remained in the vicinity of a tavern for approximately an hour. The entire party then proceeded back toward East St. Louis, driving along a country road. At about eleven o'clock they reached a place known as the Mullins Creek Bridge, where they stopped, got out of the automobile, and stood near the bridge conversing with one another. From this point there is some conflict in the testimony as to what occurred.

Two of the girls testified that defendants Hines and LeRoy then dragged or pulled the prosecuting witness across the bridge, that soon thereafter Quevreaux went across; and that screams were heard coming from the direction in which prosecuting witness had been taken. One such witness further testified that before prosecutrix was taken over the bridge, defendant LeRoy announced they were going to rape her, and that when she and defendants later returned to the car, she was crying and her clothes were torn. The third young woman is a sister of defendant Marcus LeRoy. She testified on behalf of the State that Hines and LeRoy took prosecutrix across the bridge, followed later by Quevreaux; that she did not hear prosecuting witness scream but did hear her crying; that when she returned to the automobile, she was crying and complaining of having lost her glasses. At this point in the testimony of this witness the prosecution claimed to be surprised by her statements and requested that the court make her a court's witness, subject to cross-examination by the prosecution. The court granted the motion, over objection of counsel for defendants. On cross-examination by the prosecution the witness admitted having previously stated she had heard prosecutrix scream while she was across the bridge and that she went across the bridge against her will.

The prosecuting witness testified that defendant took hold of her and pulled her across the bridge against her will; that she fought them and tried to get away; that after Quevreaux joined them across the bridge, defendants pushed her to the ground, and each in turn forcibly had sexual intercourse with her while the other two held her arms and legs; that she screamed and at no time consented to the acts.

The prosecuting witness's mother, whose name was not endorsed on the indictment, testified for the prosecution that her daughter arrived home at 3 o'clock on the morning of June 4 and related what happened; that she was highly nervous, her clothes torn, and her body and lips badly bruised. A physician testified that he examined prosecuting witness on June 4 and found bruises on her shoulder and both thighs, that her lips were swollen, the sexual organs were in a swollen and red condition, and the hymen had been recently ruptured.

Each of the defendants testified on his own behalf. Quevreaux denied that he had sexual intercourse with complaining witness or assisted in dragging her across the bridge. He further stated that he saw her cross the bridge with the other defendants; that he did not hear her scream and that he went across the bridge only to help find her glasses. Each of the other defendants admitted that he engaged in sexual intercourse with prosecuting witness, but stated that it was with her consent and encouragement. According to their testimony she willingly accompanied them across the bridge. Defendant Hines then turned back and waited on the bridge while she and defendant LeRoy engaged in sexual intercourse by mutual consent. When LeRoy returned alone Hines went over to the place where prosecuting witness had remained, whereupon she told him that "Marcus did it, and you might as well, too." Sexual intercourse with Hines then followed without objection or resistance by the prosecuting witness. Donald Frawley,

the only male member of the party not a defendant, was called as a witness for defendants. He testified he paid no attention to the others, did not see them crossing the bridge, and did not hear any scream or outcry.

Further evidence showed that after the defendants and prosecutrix had returned from across the bridge, the entire party drove back to East St. Louis and stopped at a house where one of the girls occupied a room, arriving there at about 1 o'clock A.M. Defendants Quevreaux and LeRoy then drove away in the automobile. The four girls went upstairs to this room for a short time, and thereafter, together with Donald Frawley and defendant Hines, walked to a nearby Masonic temple and sat on the steps of the building. At around 2:30 o'clock some police officers stopped where the group was sitting and advised them to go home. No complaint was made to them by the prosecutrix. She returned to her companion's room and then went for an automobile ride with some of the latter's friends, arriving home about 3 o'clock. Prosecutrix denied having been with the group on the steps of the Masonic temple when the police stopped, and the testimony of one of the other girls tended to corroborate her in this.

Defendants contend the evidence is insufficient to support the verdict, that the convictions are based upon uncorroborated testimony of the prosecuting witness, and that her failure to make any complaint until some four hours after the alleged rape renders improbable her testimony as to the defendants' use of force. There is no merit in this position. The jury heard and saw the witnesses, and, from their appearance, candor, and demeanor, had opportunities not possessed by this court for accurately estimating their credibility. The weight to be accorded their testimony is for the jury, and its verdict will not be disturbed unless the evidence is so improbable as to justify a reasonable doubt of guilt. A mere conflict in the evidence is not sufficient to raise such reasonable doubt. (*People* v. *Leach,*

398 Ill. 515.) The testimony of the prosecuting witness does not stand uncorroborated but, on the contrary, is amply supported by other evidence that she was dragged across the bridge by force, that she screamed after defendants had taken her across, that when she returned she was crying and her clothing was torn, and that her physical condition shortly thereafter was that of a person subjected to violence and sexual intercourse. It is true, the record may justify some doubt as to whether complaint by prosecutrix was made as soon as practicable after the occurrence and without any inconsistent delay. If such complaint were the only evidence relied upon for corroboration, a question might arise as to its sufficiency. But here there is other more direct evidence as to circumstances and events at the time of the acts in question, which provides adequate corroboration of prosecutrix's version of what happened.

It is further urged that the court erred in refusing to grant a continuance to enable an attorney, appointed by the court for defendant LeRoy, to prepare a defense. It appears from the record that on November 29, 1949, the day the case was called for trial, the attorney who had originally been appointed to represent Marcus LeRoy was not present in the circuit court but was engaged in arguing another case then pending before this court; that the court thereupon appointed another attorney, present in court at the time, who had had little experience at the bar, to conduct a defense on behalf of LeRoy; and that this attorney had only a few minutes in which to consult his client before the start of the trial. It is argued that in denying the motion of this attorney for a continuance the court deprived defendant LeRoy of an opportunity to prepare his defense. It is well settled that a defendant in every criminal case is entitled to a reasonable time and full opportunity to prepare for his trial. But this does not mean that a defendant, represented by competent counsel, is denied such opportunity when that counsel fails to appear at the time

of the trial, and new counsel is appointed with defendant's consent. His original counsel was appointed on August 24, three months prior to the time of trial. It does not appear that this attorney had withdrawn from the case at any time. The record does not show that on the day of the trial defendant was surprised at the absence of his original attorney; that the inability of the latter to be present was not known in sufficient time to arrange for substitute counsel; or that if further time to prepare had been allowed the new attorney he would have been able to offer a defense different from that actually presented. Moreover, nothing appears to indicate that the defense of LeRoy differed in any material respect from that of the other defendants, whose counsel had adequate opportunity for preparation. The granting of a continuance for the preparation of a case necessarily depends upon the particular facts and circumstances and is a matter largely resting in the sound judicial discretion of the trial court. Its decision will be disturbed only when it is shown that that discretion has been abused. (*People* v. *Ritcheson,* 396 Ill. 146.) We are unable to say that, under the unusual circumstances present in this case, the court abused its discretion in denying a continuance.

Defendants next assign as error the ruling, made over their objections, whereby the witness Shirley LeRoy, sister of one of defendants, was made a court's witness. In support of their position they assert that the pretrial statements of this witness did not conflict with her testimony on the witness stand and that the prosecution therefore could not claim surprise. The witness first testified that she had heard prosecutrix crying when she was across the bridge but did not hear any screams. This was at variance with her previous statements and, together with the fact that she was a sister of one of defendants, justified the court in making her a court's witness. When a witness for

the State gives surprise testimony on cross-examination by a defendant, the court may allow the State to examine the witness to show that he is giving unexpected testimony and to call his attention to former statements so as to refresh his memory or awaken his conscience. Such procedure does not amount to an impeachment by the State of its own witness. (*People* v. *Rongetti,* 344 Ill. 278.) Under the circumstances of this case, the court did not err in permitting the prosecution to cross-examine Shirley LeRoy.

It is further argued that the court should have granted defendants' request to recall her as the court's witness at a later stage of the case for the purpose of allowing them to cross-examine her regarding a conversation she supposedly overheard in which a probation officer and prosecutrix's mother had allegedly made certain promises to another witness in order to obtain favorable testimony. There was no error in refusing this request. The purpose was not one for which she would be qualified to be called as a court's witness. It did not relate directly to the events connected with the offense with which defendants were charged but merely to whether another witness was improperly induced to testify favorably for the State. The fact that, under certain circumstances, a witness may be called by the court and cross-examined by both sides does not mean that every witness may be so called, or that the cross-examination may include everything that may affect credibility. *People* v. *Boulahanis,* 394 Ill. 255.

Defendants also complain that the court erred in permitting prosecutrix's mother to testify. Their objection in the trial court was made on the ground that her name was not endorsed on the indictment. Defendants, however, did not ask for a continuance. Nor did they give any other indication that they were prejudiced by the absence of her name on the indictment. The purpose of the requirement

that a list of witnesses shall be furnished the defendant is to prevent surprise and afford an opportunity to combat false testimony. It is within the court's discretion to allow witnesses to testify whose names are not endorsed upon the back of the indictment. The exercise of that discretion will not be reviewed unless it appears the defendant has been taken by surprise, and the burden of showing this is upon the defendant. (*People* v. *Weisberg*, 396 Ill. 412.) No such showing has been made in the case at bar.

In further support of their objection to the mother's testimony, defendants argue that no explanation was made of the delay on the part of the prosecutrix in making complaint, and that, unless the complaint is made without inconsistent or unexplained delay, evidence thereof is incompetent. The argument cannot prevail. Not only did defendant's objection in the trial court fail to specify this ground for excluding her testimony, but the testimony itself was confined principally to the physical condition of prosecutrix and her clothing. As to complaints of the offense itself, the mother's testimony was merely that the daughter "told me what happened to her that night." The circuit court did not err in allowing the mother to testify.

Objection is next made to an instruction given to the jury, which defined the crime of rape in the words of the statute. This instruction included, as part of the definition, the carnal knowledge of any female person under the age of sixteen years either with or without her consent. It is argued that this tended to confuse the issue in the minds of the jurors and render them uncertain whether force and lack of consent were necessary elements of the offense in the case at bar. The portion of the instruction relating to rape of a female under sixteen years of age was clearly not within the issues and should not have been included. But the evidence was undisputed that prosecutrix was sixteen years of age at the time the acts were committed, and two of the accused young men testified in their

defense that their intercourse with her was done with her consent. Moreover, by other instructions the jury was informed that the crime charged in the indictment requires that the intercourse with complainant must be by force and against her will. While the giving of an instruction which defines a crime not charged in the indictment is improper, we think that, under the circumstances of this case, the jury was not misled and defendants were not prejudiced by the error. The giving of the instruction is therefore not ground for reversing the judgment.

Defendants next complain of alleged improper and misleading remarks of the assistant State's Attorney in the course of his closing argument to the jury. The abstract contains no reference to the arguments of counsel, except that the excerpts objected to are set forth in defendants' motion for a new trial. This is not a proper method of preserving the question for review, and it cannot therefore be considered. Arguments of a State's Attorney or his assistants, alleged to be unfair or improper, should be contained in the bill of exceptions to be preserved for review, and it is not sufficient that they are recited in a motion for a new trial. *People v. Smith,* 404 Ill. 125.

Defendants finally object that witnesses for the State were not available for interview prior to the trial; that they were improperly influenced by certain county officers; and that after the motion for a new trial was overruled the prosecution improperly brought to the court's attention by affidavit matters not supported by the record. We have examined such contentions and find them to be without sufficient merit to warrant the extension of this opinion by discussion thereof in further detail.

While the record is not entirely free from error, it is not the policy of this court to reverse a judgment of conviction unless it appears that real justice has been denied or that the verdict of the jury and the judgment of the court may have resulted from such error. (*People* v.

*Susanec,* 398 Ill. 507, 515; *People* v. *Vaughn,* 390 Ill. 360, 374.) We conclude that defendants were not prejudiced by any error in this record, and that the proof is not so unsatisfactory as to justify us in entertaining a reasonable doubt of guilt. The judgment of the circuit court is accordingly affirmed.

*Judgment affirmed.*