(No. 40596.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ALBERT A. RABY, Appellant.

*Opinion filed September 24, 1968.*

WARD, J., took no part.

LEO E. HOLT, of Chicago, and JACK GREENBERG and JAMES M. NABRIT III, both of New York, New York, for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JOEL M. FLAUM, Assistant State's Attorneys, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

A jury in the circuit court of Cook County found the defendant, Albert A. Raby, guilty of disorderly conduct and resisting arrest. He was fined $500 on the disorderly conduct charge and was sentenced to three months in the county jail for resisting arrest. On this direct appeal, he contends that his constitutional rights were violated in several respects.

The facts are undisputed. On June 28, 1965, the defendant and several other persons conferred with the mayor of the city of Chicago about problems of racial segregation in the Chicago public schools. During the conference a number of persons marched around the City Hall block, carrying banners and signs protesting racial segregation in the schools. At the conclusion of the conference, the defendant made a brief speech at the LaSalle Street entrance to the City Hall. After the speech, about 5:00 P.M., at the peak of the evening rush hour, the defendant and about 65 others went to the intersection of Randolph and LaSalle Streets where they either sat down or lay down, completely blocking traffic through the intersection. Police officers asked that they leave the intersection. They refused, and approximately twenty minutes later the officers began placing them under arrest. To arrest the defendant, the officers had to untangle him from others with whom he had intertwined his arms and legs. He then "went limp" and had to be carried to a police van.

The sections of the Criminal Code under which the defendant was convicted are:

Section 26—1(a). "A person commits disorderly conduct when he knowingly: (1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace * * *." (Section 26—1(b) provides that "a person convicted of a viola-

tion * * * shall be fined not to exceed $500.") Ill. Rev. Stat. 1967, chap. 38, par. 26—1.

Section 31—1. "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity shall be fined not to exceed $500 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both." Ill. Rev. Stat. 1967, chap. 38, par. 31—1.

The defendant's first contention is that "on their face, and as applied to defendant's conduct sections 26—1(a) and 31—1's proscriptions are vague and overbroad in violation of the first and fourteenth amendments of the United States Constitution and Article II, sections 2 and 4 of the Illinois Constitution."

As to the validity of section 26—1(a), it is said that to be guilty of an offense "a defendant need only commit an act which subjectively alarms or disturbs another and thereby provokes a breach of the peace," and that the statute "subjects citizens' right to engage in certain undefined conduct to the unfettered discretion of the police." But these arguments overlook the words of the statute which qualify the frame of mind of both the actor and of those affected by the actor's conduct. That conduct must be engaged in "knowingly" and "in such unreasonable manner" as to provoke a breach of the peace. The word "knowingly" describes a conscious and deliberate quality which negatives accident or mistake. "Unreasonable" is not a term that is impermissibly vague. As used in the fourth amendment it furnishes the governing standard by which the legality of police intrusions upon privacy are measured. (*Terry* v. *Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889.) As used in this statute it removes the possibility that a defendant's conduct may be measured by its effect upon those who are inordinately timorous or belligerent. The well recognized common-law

term "breach of the peace" appears in section 6 of article 1 of the constitution of the United States.

By a process of selection from among various dictionary definitions of the words used in the pertinent portion of section 26—1(a), the defendant concludes that if those words are read literally, "a person is guilty of disorderly conduct when he engages in 'conduct which constitutes a breach of the public peace or violates the standards of public morality when he does any act in an irrational, foolish, unwise, absurd, silly, preposterous, senseless, stupid manner so as to frighten, terrorize, apprehend or throw into disorder another and to provoke a violation of public order'." Such a method of interpretation could, of course, be applied to drain the sense and meaning out of any constitutional or statutory provision, for there are few words that have a constant meaning regardless of their context. In no case has the statute been applied or construed in the irrational manner the defendant suggests, and we foresee no possibility that any court would so construe it.

It is true that section 26—1(a) does not attempt to particularize all of the myriad kinds of conduct that may fall within the statute. The legislature deliberately chose to frame the provision in general terms, prompted by the futility of an effort to anticipate and enumerate all of the methods of disrupting public order that fertile minds might devise. "Section 26—1(a) is a general provision intended to encompass all of the usual types of 'disorderly conduct' and 'disturbing the peace'. Activity of this sort is so varied and contingent upon surrounding circumstances as to almost defy definition. * * * In addition, the task of defining disorderly conduct is further complicated by the fact that the type of conduct alone is not determinative, but rather culpability is equally dependent upon the surrounding circumstances. * * * These considerations have led the Committee to abandon any attempt to enumerate 'types' of disorderly conduct. Instead, another approach has been

taken. As defined by the Code, the gist of the offense is not so much that a certain overt type of behavior was accomplished, as it is that the offender knowingly engaged in some activity in an unreasonable manner which he knew or should have known would tend to disturb, alarm or provoke others. The emphasis is on the unreasonableness of his conduct and its tendency to disturb. * * *" S.H.A., chap. 38, par. 26—1. Drafting Committee Comments.

The defendant also argues that section 26—1(a) is overbroad because it may be applied to "persons exercising their First and Fourteenth Amendment freedoms of expression." This argument is untenable because it attributes to the statute an unreasonably broad construction that no court would sanction, and the "constitutionality of a statute * * * is not dependent on its susceptibility of misapplication." (*Landry* v. *Daley* (N.D. Ill. 1968), 280 F. Supp. 938, 960.) Moreover, the contention adopts a view already rejected by the United States Supreme Court that "an apparently limitless variety of conduct can be labelled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States* v. *O'Brien* (1968), 391 U.S. 367, 20 L. Ed. 672, 679.

Under no circumstances would the statute "allow persons to be punished merely for peacefully expressing unpopular views". A construction by the Louisiana Supreme Court which permitted such a result caused the invalidation of Louisiana's "disturbing the peace" statute. (*Cox* v. *Louisiana,* 379 U.S. 536, 544, 13 L. Ed. 2d 471, 484.) But in that same case, upon which defendant heavily relies, the Supreme Court upheld the constitutionality of proscribing the precise conduct engaged in by the defendant—conduct clearly within the language of the present statute. "The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of govern-

mental responsibility to insure this necesary order. * * *
One would not be justified in ignoring the familiar red light
because this was thought to be a means of social protest.
Nor could one, contrary to traffic regulations insist upon a
street meeting in the middle of Times Square at the rush
hour as a form of freedom of speech or assembly." (379
U.S. at 554, 13 L. Ed. at 484.) We cannot accept defend-
ant's contention that section 26—1(a) was unconstitution-
ally applied.

The validity of section 26—1(a) was recently sustained
by a three-judge Federal district court against an attack
like that mounted by the defendant in this case. (*Landry* v.
*Daley* (N.D. Ill., 1968), 280 F. Supp. 938.) And a simi-
lar attack was rejected in *United States* v. *Woodard* (7th
cir.), 376 F.2d 136, a case that arose under the Federal
Assimilative Crimes Act. (18 U.S.C. 7, 13.) A similar New
York disorderly conduct statute was sustained in *United
States* v. *Jones* (2d cir.), 365 F.2d 675, and a New Jersey
disorderly conduct statute, couched in terms at least as
broad as section 26—1(a), was sustained in *New Jersey* v.
*Smith* (1966), 46 N.J. 510, 218 A.2d 147, 151, *cert.* denied,
385 U.S. 838, 17 L. Ed. 2d 71.

We agree with the conclusions that have been reached
in these decisions, and we hold that section 26—1(a) is not
vulnerable to the constitutional attack advanced by the de-
fendant.

The defendant attacks the resisting-arrest provision (Ill.
Rev. Stat. 1967, chap. 38, par. 31—1) upon the ground that
it fixes no standards for the ascertainment of guilt. This
attack was recently rejected in *Landry* v. *Daley* (N.D. Ill.
1968), 280 F. Supp. 938, 959. In that case the court empha-
sized that the statute requires knowing resistance or ob-
struction, "which considerably narrows the scope of the en-
actment by exempting innocent or inadvertent conduct from
its proscription" (280 F. Supp. at 959.). The court further
noted that the statutory terms "convey commonly recognized

meanings. 'Resisting' or 'resistance' means 'withstanding the force or effect of' or the 'exertion of oneself to counteract or defeat'. 'Obstruct' means 'to be or come in the way of'. These terms are alike in that they imply some physical act or exertion. Given a reasonable and natural construction, these terms do not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." (280 F. Supp. at 959.) We agree with these observations, and we hold that section 31—1 is neither vague nor overbroad.

The defendant also argues that the "disorderly conduct complaint and the resisting or obstructing an officer complaint did not charge the offenses with the degree of specificity required by the constitution of the United States, the Illinois Constitution and the Code of Criminal Procedure." The disorderly conduct charge alleged that the defendant "on or about 28 June 1965 at Randolph and LaSalle committed the offense of disorderly conduct in that he knowingly did collect in a crowd or body for unlawful purposes or for purposes to the annoyance or disturbance of other persons, in such unreasonable manner as to alarm and to disturb another and to provoke a breach of the peace." With the exception of the allegations of time and place, and the specification that the defendant "did collect in a crowd or body for unlawful purposes or for purposes to the annoyance or disturbance of other persons," the charge is in the language of the statute.

The complaint is not a model of grammatical elegance, but it does inform the defendant of the date and place of the occurrence, and it specifies the conduct involved— collecting in a crowd to annoy and disturb other persons. The fact that this portion of the complaint uses language

that is used also in an ordinance of the city of Chicago is of no significance. That language was adequate to apprise the defendant of the conduct that constitutes the offense charged against him. If the defendant needed more detailed information to prepare his defense, a motion to that effect should have been made. *City of Chicago* v. *Joyce* (1967), 38 Ill.2d 368.

Nor can we accept the defendant's contention that the complaint for resisting arrest is similarly defective. After specifying the date and describing the location, that complaint charged that defendant "committed the offense of Resisting or Obstructing a Peace Officer in that he * * * resisted a police officer in the performance of his duty by: When placed under arrest by said officer, refused to voluntarily accompany arresting officer and had to be physically carried away." This complaint adequately apprised the defendant of the particular acts with which he .was charged.

The complaint for resisting arrest originally included an additional allegation: that, when placed under arrest, the defendant "refused to voluntarily accompany [the] arresting officer, and had to be physically carried away and while being carried, did kick, squirm, struggle in an effort to escape the custody of said officer." This allegation was stricken after the defendant complained that its inclusion left him in doubt as to whether he was being charged under section 7—7 or section 31—1 of the Criminal Code. The complaint specified only the latter section. Nevertheless, to prevent possible confusion, the State asked and was granted permission to strike the second allegation. The defendant now argues that it was reversible error to allow this amendment. The argument is without merit. Section 111—5 of the Code of Criminal Procedure provides: "An indictment, information or complaint which charges the commission of an offense * * * may be amended on motion by the State's Attorney or defendant at any time because of formal defects, including: * * * (d) The presence of any un-

necessary allegation." Ill. Rev. Stat. 1967, chap. 38, par. 111—5.

The defendant also contends that the "court erred in allowing the state to amend its list of witnesses after the trial had commenced  *  *  *" in violation of section 114—9 of the Code of Criminal Procedure (Ill. Rev. Stat. 1967, chap. 38, par. 114—9) and the sixth amendment to the constitution of the United States. Section 114—9 provides: "(a) On motion of the defendant the court shall order the State to furnish the defense with a list of prosecution witnesses and their last known addresses. (b) The court may permit witnesses not named in an original or amended list to testify when the names of the additional witnesses were not known and could not have been obtained by the exercise of due diligence prior to trial."

The State filed its original list of witnesses on January 20, 1966. It included the names of four members of the Chicago Police Department, only one of whom, Richard Becker, testified at the trial. On September 13, 1966, the day after the jury was impaneled, the State filed an amended list of witnesses, listing Richard Becker and four police officers who had not been on the original list. The State offered no explanation for its failure to provide the defendant with these names earlier. The defendant's objection was overruled but he did not ask for a continuance.

"The purpose of the requirement that a list of witnesses shall be furnished the defendant is to prevent surprise and afford an opportunity to combat false testimony." (*People* v. *Quevreaux,* 407 Ill. 176, 184; Committee Comments to S.H.A. 1964, chap. 38, sec. 114—9, p. 378.) We have repeatedly held that "allowing unlisted witnesses to testify is within the discretion of the trial court and in the absence of a showing of surprise or prejudice, that discretion will not be reviewed." (*People* v. *Jordan,* 38 Ill.2d 83, 93; see, e.g., *People* v. *Clay,* 38 Ill.2d 17; *People* v. *Kenzik,* 22 Ill.2d 567.) And the "burden of showing surprise or preju-

dice is on the defendant." *People* v. *Kenzik,* 22 Ill.2d 567, 571.

In this case the defendant has at no time suggested that if he had been afforded an opportunity to prepare for the testimony of the unlisted witnesses he would have been able to produce rebuttal witnesses or to otherwise impeach the credibility of the unlisted witnesses. (See *People* v. *O'Hara,* 332 Ill. 436, 442, 466.) Moreover, he himself testified to substantially the same facts. He has thus failed to make any showing that it was prejudicial to permit the unlisted witnesses to testify, or that their testimony in any way surprised him. Under these circumstances, we hold that the State's failure to provide defendant with a complete list of its witnesses prior to trial was neither reversible error under section 114—9 of the Code of Criminal Procedure nor an abridgment of his right to counsel under the sixth amendment to the constitution of the United States.

We have carefully examined the defendant's contentions that reversible error was committed by the trial judge in his rulings upon the instructions. The objections, in our opinion, are not well taken and, with one exception, do not merit discussion. After setting out the statute and the charge with respect to resisting or obstructing arrest, the court gave the following instruction: "The court instructs the jury, as a matter of law, that resisting a peace officer in the performance of his duty may be passive as well as active. To interfere and obstruct does not require active resistance and force." The defendant argues that it was error to give this instruction and to refuse an instruction tendered by the defendant which advised the jury of certain dictionary definitions of the term "resist". The refused instruction emphasized that the term "resist" included the notion of effective opposition: "to oppose actively; to strive, fight, argue or work against; to endeavor to counteract, defeat or frustrate." In this case the police officers described the defendant's conduct as "going limp" so that he had to

be carried to the police van. The defendant testified that he went into the intersection with others in the group, sat down and remained there for twenty minutes until he was removed by police officers. While the defendant testified that he did not know what "going limp" meant, he also testified that he became "relaxed," by which he meant that he was "totally immobile" and in no way resisted or gave any muscular resistance. With the record in this condition, the rulings of the trial court upon these instructions were correct.

We have carefully examined the defendant's contentions that the trial court erred in refusing to permit a witness called by the defendant to testify. This witness had been present in the courtroom in violation of an order excluding witnesses. To demonstrate error the defendant relies upon numerous decisions that have pointed out that an exclusionary rule must not be administered arbitrarily, but that a sound discretion must be exercised, bearing in mind that a party can not always control the conduct of his witnesses, and that the objective of a trial is to ascertain the truth. The judge's discretion was soundly exercised in this case. The defendant's offer of proof showed that this witness would testify that the defendant had "assumed a prone position in the intersection of Randolph and LaSalle Streets." The offer of proof also embraced testimony as to the defendant's good reputation as a peaceful and law abiding citizen. Numerous other character witnesses testified, and the testimony of this witness would only have been cumulative upon an issue that was not in dispute. The remainder of his testimony would have related to misconduct and brutality of police officers which he said had taken place after the defendant and others who had been sitting or lying in the intersection had been arrested. This testimony was immaterial.

Finally, the defendant contends that he should not have been sentenced upon both the disorderly conduct charge and

the charge of resisting arrest. This contention is based upon section 1—7(m) of the Criminal Code of 1961, which literally authorizes consecutive sentences when a person has been convicted of 2 or more offenses which did not result from the same conduct, but which has been construed to prohibit consecutive or concurrent sentences when a person has been convicted of two offenses resulting from the same conduct. (*City of Chicago* v. *Hill,* 40 Ill.2d 130, 136.) The defendant relies upon *People* v. *Ritchie,* 66 Ill. App. 2d 302, in which the appellate court held that the offenses of rape and burglary with intent to commit rape arose out of the same conduct or transaction and that the defendant could therefore not be sentenced for both offenses. The result reached by the appellate court is, however, questionable. (See, *People* v. *Ritchie,* 36 Ill.2d 392, 397.) Certainly, the offenses in this case are separate and distinct. Unlike *City of Chicago* v. *Hill,* 40 Ill.2d 130, *People* v. *Golson,* 32 Ill.2d 398, and *People* v. *Duszkewycz,* 27 Ill.2d 257, more than a single act is involved in this case. The offense of disorderly conduct was complete before there was any attempt to make an arrest and there was no necessary relationship between the two offenses.

The judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.