2021 IL App (2d) 191132-U
Nos. 2-19-1132 & 2-19-1135 cons.
Order filed December 14, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| VILLAGE OF LAKE BLUFF, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 18-DT-824 |
| | ) | 18-OV-2434 |
| | ) | 18-TR-38116 |
| | ) | 18-TR-38117 |
| | ) | 18-TR-68034 |
| | ) | 18-TR-68035 |
| | ) | |
| VIANEY ROGEL-REBOLLAR, | ) | Honorable |
| | ) | Donna-Jo Rodden Vorderstrasse, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Zenoff and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for obstructing a peace officer was affirmed where the evidence showed that, following a traffic stop, defendant refused for five minutes to comply with repeated directives to exit her vehicle. Her noncompliance constituted obstruction because she placed the officers at risk as they stood on the edge of a busy highway. Defendant's claim that she did not understand the officers because she spoke limited English was belied by the video of the traffic stop.

¶ 2    Defendant, Vianey Rogel-Rebollar, appeals her conviction of obstructing a peace officer

under section 5-7-3-6 of the Lake Bluff Municipal Code (Lake Bluff Municipal Code § 5-7-3-6

(1988)). She contends that the evidence was insufficient to prove her guilty when she did not immediately exit her vehicle as requested by officers during a traffic stop and instead questioned why she should comply. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The Village of Lake Bluff (Village) charged defendant with multiple offenses arising from a May 17, 2018, traffic stop. On the date of the stop, she was charged with driving under the influence of alcohol (DUI) in case No. 18 DT 824 and with two counts of improper lane usage in case Nos. 18-TR-38116, and 18-TR-38117. On September 19, 2018, the Village brought further charges relating to the May 17, 2018, stop. Defendant was charged with obstructing a peace officer in case No. 18-OV-2434, driving on the shoulder in case No. 18-TR-68034, and reckless driving in case No. 18-TR-68035. The cases were consolidated, and a bench trial was held.

¶ 5     At trial, Lake Bluff police officer Mark Szalkowski testified that, on May 17, 2018, at about 2:15 a.m., he noticed a van driven by defendant traveling southbound on Illinois Route 41 at 30 miles per hour in a 55-mile-per-hour zone. Route 41 is a four-lane highway with two lanes heading north separated by a raised median from two lanes heading south. The lanes heading in the same direction are separated by a white hash line, and the right-most lane is divided from the shoulder by a white fog line. The shoulder has a rumble strip, which causes a vehicle to vibrate harshly when driving on it.

¶ 6     Szalkowski followed the van and observed it weaving. Three times, Szalkowski observed the van begin in the right lane, veer to the left with its driver's side tires crossing the center hash line, and then veer back to the right with its passenger's side tires crossing the white fog line. On the third time, the van went over the fog line completely and drove on the shoulder for a quarter of a mile. The van did not employ its turn signal for any of the three times it crossed the lines.

Szalkowski testified that there were no other vehicles on the road at the time, and there was no debris on the roadway to cause the van to leave its lane and go onto the shoulder. Szalkowski observed the van veer back from the shoulder into the right lane and then cross over the hash line. Another car was on the road at the time and moved to avoid hitting the van. The van continued to weave and cross over the hash line and the fog line. The van was also randomly braking yet there were no stop signs or traffic signals on that stretch of the highway.

¶ 7    Szalkowski decided to initiate a traffic stop. He turned on his squad lights, and the van slowed down but did not immediately stop. Szalkowski approached the van and asked defendant to put the gearshift in park. She complied. Szalkowski asked for her driver's license and proof of insurance. Defendant held up three cards—her driver's license, a gift card, and a credit card—and placed them on her seat. Szalkowski told defendant that her license was in front of her and asked for it again. Szalkowski observed that defendant had bloodshot, glassy eyes, and he smelled the odor of alcohol emanating from the van. He asked defendant if she had consumed any alcohol, and she said that she had two beers about an hour ago. He also asked defendant where she was coming from, and she said that she was going home to Waukegan. Defendant did not answer Szalkowski's questions as to why she could not keep her van in her lane. Szalkowski testified that the entire conversation was in English and that defendant never indicated that she did not understand him. He believed that defendant was able to understand him even though, when he asked her if she understood, she replied, "Si," in Spanish.

¶ 8    Szalkowski asked defendant to step out of the van so that he could conduct field sobriety tests. She did not get out of the van. Szalkowski testified that he repeated his request about 10 times. Another responding officer reached through from the passenger's side and unbuckled defendant's seatbelt, and defendant got out of the van. Szalkowski led defendant to the back of

the van and attempted to administer the horizontal gaze nystagmus test. Defendant did not comply with the instructions for the test. Szalkowski arrested defendant, and she refused a breath test. Based on his personal and professional experience, Szalkowski believed that defendant was under the influence of alcohol. Szalkowski charged defendant with two counts of improper lane usage and DUI (as noted, several months later, defendant was charged with obstructing a peace officer and other offenses).

¶ 9      Squad car video of the traffic stop corroborated Szalkowski's testimony. The video showed defendant's van swerving on the roadway and driving on the shoulder. Upon stopping the van, Szalkowski asked defendant if she was willing to step out of her car to undergo field sobriety tests to make sure that she was okay to drive. Defendant responded, "I'm okay to drive." Szalkowski told her that, based on what he could smell and what she had told him, he would arrest her for DUI if she did not undergo field tests. Defendant asked him "Why?" and said she was "honest" and was "okay." Szalkowski replied that he did not think that she was okay and that he wanted her to take some tests to make sure. Defendant continued to question Szalkowski's requests that she exit the vehicle, asking, "What tests?" and "Why?" She insisted that she was okay to drive and was being "honest." Defendant also asked to make a phone call. Szalkowski said that she could not make a phone call at that time and that she had to prove she was okay because he was worried about her driving. Szalkowski repeatedly asked, and at times ordered, defendant to exit the vehicle, and she continued to question him, asking, "Why?" and claiming that she did not understand. She said she was "okay" and wanted to make a phone call. During one of his requests that defendant exit the vehicle, Szalkowski asked her, "Do you understand that?" and defendant answered, "Si," in Spanish. Szalkowski asked her why she was not getting out, and defendant answered, "Because I'm okay." During some of his requests that defendant exit the

vehicle, Szalkowski indicated the danger from semi-trucks passing on the road. He told defendant that he would arrest her for DUI if she did not take the tests. He said, "I don't want to pull you out of the car." When defendant continued not to comply, Szalkowski opened the door to the van and told her he would have to charge her with obstruction or resisting arrest. Szalkowski asked another responding officer to get defendant's seatbelt, and that officer opened the passenger's side door and asked defendant to step out. Defendant told the other officer, too, that she was "okay" and wanted to make a phone call. The officer told her that she was putting everyone in danger. Defendant stated that she did not understand. The officer also told her that she had to step out of the vehicle or they would remove her from it. Defendant then said, "Okay," and exited the van. Approximately five minutes elapsed from when Szalkowski first asked defendant to exit the van and when she did so.

¶ 10    Assisted by an interpreter, defendant testified that she could not "completely" speak English. On May 17, 2018, between 1 and 2 a.m., she left a restaurant after completing her shift as a waitress. Beer had spilled on her at work. Toward the end of her shift, she was thirsty and decided to drink two beers rather than water. As she drove, she argued on the phone with her boyfriend. She was very upset and crying. The boyfriend hung up but continued to send her text messages. She replied to the messages and did not immediately notice the police lights behind her. She testified that, at the time, she did not know why she was stopped. She was "very nervous," and "a lot of things were going through [her] mind." She admitted that the officer told her "multiple times to get out of the car." She did not comply because she was "afraid" and wanted her family to know that an officer stopped her. She also testified that she could not understand the officer because she was "very nervous" and "couldn't have a conversation." She told the officer that she could not understand him. When she finally exited, she went to the rear of the van. She

followed the officer's directions in the first test to "follow the light." After that test was over, she knew that the officer wanted her to perform another test, but she could not understand the instructions because she was "so nervous" and "couldn't concentrate." Defendant testified that she could not recall ever telling the officer that she could understand him.

¶ 11 The trial court found defendant guilty of all charges. She was sentenced to supervision and community service. She filed separate appeals from her convictions. In case No. 2-21-1132, she appealed her conviction of obstructing a peace officer. In case No. 2-21-1135, she appealed her convictions of DUI, improper lane usage, driving on the shoulder, and reckless driving. Defendant's brief on appeal challenges only her conviction of obstructing a peace officer.

¶ 12                                   II. ANALYSIS

¶ 13 Defendant argues that she was not guilty of obstructing a peace officer because the Village proved merely that she argued with the officer about their authority and that the Village did not establish that she impeded or delayed the officers' performance of their duties. We note that, initially, defendant contended that the standard of proof at trial was guilt beyond a reasonable doubt. However, although a municipality's enforcement of an ordinance is a quasi-criminal proceeding, such cases are tried and reviewed as civil proceedings. *Village of Plainfield v. American Cedar Design, Inc.,* 316 Ill App. 3d 130, 135 (2000). The burden of proof in an ordinance violation case is the civil law standard of preponderance of the evidence rather than the criminal standard of beyond a reasonable doubt. Ill. S. Ct. R. 578 (eff. Dec. 7, 2011) (Committee Comment citing *City of Mattoon v. Mentzer,* 282 Ill. App. 3d 628, 634 (1996) (citing *Chicago v. Joyce,* 38 Ill. 2d 368, 373 (1967))). In his reply brief, defendant concedes this point.

¶ 14 On review, a trial court's factual determinations regarding the violation of an ordinance will not be reversed unless they are contrary to the manifest weight of the evidence. *County of*

*Kankakee v. Anthony,* 304 Ill App. 3d 1040, 1048 (1999). "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner v. Gross,* 202 Ill. 2d 228, 252 (2002). In applying the manifest-weight-of-the-evidence standard, "[a] reviewing court will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." *Best v. Best*, 223 Ill. 2d 342, 350 (2006). After reviewing the totality of the evidence in this case, we conclude that the trial court's decision was not against the manifest weight of the evidence.

¶ 15    Under the Lake Bluff Municipal Code, "[a] person commits the offense of resisting or obstructing a peace officer when such person knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity." Lake Bluff Municipal Code § 5-7-3-6 (1988). That provision's operative language is identical to that of section 31-1(a) of the Illinois Criminal Code of 2012 (720 ILCS 5/31-1(a) (West 2018)), which provides that a person is guilty of resisting or  obstructing a peace officer when the person "knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity."

¶ 16    Under section 31-1(a), "resisting" or "resistance" means "withstanding the force or effect of" or the "exertion of oneself to counteract or defeat." (Internal quotation marks and citations omitted). *People v. Synnott*, 349 Ill. App. 3d 223, 225 (2004). "Obstruct" means "to be or come in the way of." (Internal quotation marks and citations omitted.) *Id.* "These terms are alike in that they imply some physical act or exertion." *Id.* The terms do not proscribe mere argument with a policeman about the validity of an arrest or other police action. *Id.* Instead, they proscribe some physical act imposing an obstacle that may impede, hinder, interrupt, prevent or delay the

performance of the officer's duties. *Id.* Examples include acts such as going limp, forcefully resisting arrest, or physically aiding a third party to avoid arrest. *Id.* See also *People v. Raby*, 40 Ill. 2d 392, 399 (1968).

¶ 17    However, the distinction between acting and refraining from action is not dispositive under section 31-1(a). *Synnott*, 349 Ill. App. 3d at 227. "[I]n common usage in the criminal law context, the word 'act' is used broadly and is understood to include 'a failure or omission to take action.' " *Id.* (quoting 720 ILCS 5/5-2 (West 2002)). Thus, obstruction can occur when a person remains stationary. *Id.* (citing *Raby*, 40 Ill. 2d at 399). "[M]erely refusing a policer officer's lawful order to move can constitute interference with the officer in the discharge of his or her duty." *Id.* The focus is on the tendency of the defendant's conduct to impose an obstacle that impeded the officer in the performance of authorized duties. *People v. Baskerville*, 2012 IL 111056, ¶ 23. Whether the defendant imposed such an obstacle is an inquiry for the trier of fact based on the facts and circumstances of the case. *Id.*

¶ 18    In *Synnott*, this court affirmed the defendant's conviction of obstructing a peace officer where the defendant repeatedly refused to comply with the officer's lawful order to exit a vehicle following a traffic stop. After the officer had given the order four times, the defendant grabbed the steering wheel with both hands. The officer then grabbed the defendant by the arm and pulled on him. The officer testified that, within seconds, the defendant released the steering wheel and exited the vehicle. The defendant argued that a conviction of obstructing a peace officer could not be sustained absent proof of a physical act and that merely refusing to comply with a police officer's orders did not constitute obstruction. We held that the defendant's repeated refusal to comply with the officer's instruction to exit the vehicle following a lawful traffic stop constituted obstruction. *Synnott*, 349 Ill. App. 3d at 228.

¶ 19 We noted in *Synnott* that, following a lawful traffic stop, the police may, as a matter of course, order the driver from the vehicle without implicating the fourth amendment (U.S. Const., amend. IV). *Synnott*, 349 Ill. App. 3d at 228. This rule, we observed, "is based on considerations of officer safety," and "any behavior that threatens an officer's safety or even places an officer in fear of his or her safety is a significant impediment to the officer's performance of his or her duties." *Id.* Thus, we rejected the defendant's suggestion that his refusal to exit the vehicle was mere antagonism or belligerence. See *id.*

¶ 20 Under *Synnott*, the evidence here was sufficient to prove defendant guilty of obstructing a peace officer. For five minutes, defendant repeatedly refused the officers' lawful orders to exit her van. She thereby placed the officers at risk as they stood on the shoulder of a busy highway with semi-trucks passing. It was reasonable for the trial court, as the trier of fact, to conclude that defendant's behavior threatened officer safety and impeded their duties. While defendant argues that she spoke limited English and did not understand the officers' orders, the record contains abundant evidence to the contrary. Szalkowski testified that defendant understood him, and the video of the stop shows that defendant communicated effectively with him in English. Moreover, defendant admitted during her testimony that the officer told her "multiple times to get out of the car." Thus, the court could reasonably conclude that defendant's statement to Szalkowski that she did not understand him was a continued act of refusal and a delaying tactic.

¶ 21 Attempting to distinguish *Synnott,* defendant notes that she complied with instructions to place her van in park, did not grab her steering wheel or otherwise physically brace herself in the van, and was not forced from the van. Defendant ignores the wider holding of *Synnott*: any behavior that threatens officer safety impedes the performance of the officer's duties. See *Synnott*, 349 Ill. App. 3d at 228. As noted, defendant's conduct met this criterion.

¶ 22     Defendant relies on several cases overturning convictions for resisting or obstructing a peace officer because the defendant's noncompliance did not impede the officer's performance of duties.  In *People v. Weathington*, 82 Ill. 2d 183, 185 (1980), the defendant initially refused to answer booking questions but, after a few minutes, complied.  The defendant's "mere argument" with the officer for a brief time did not violate section 31-1.  *Id.* at 187.  In *People v. Berardi*, 407 Ill. App. 3d 575, 577-80, 584 (2011), the court, following *Weathington*, held that the defendant did not violate section 31-1 where he acquiesced to authority after briefly arguing with the police over his right, as an alderman, to remain after hours in a private office in city hall.  Finally, in *People v. Taylor*, 2012 IL App (2d) 110222, ¶¶ 4, 17, the defendant's initial giving of a false name when the police stopped him on the street did not materially impede the police in discovering the defendant's identity and arresting him on an outstanding warrant.

¶ 23     Defendant argues, based on *Weathington*, *Berardi*, and *Taylor*, that she merely argued with Szalkowski for "a few minutes" about the validity of his directives that she exit the vehicle and perform tests.  Defendant misconstrues these cases, which do not hold that obstruction is determined solely by the amount of time consumed by the defendant's noncompliance.  Rather, considerations of officer safety are paramount.  See *People v. Mehta*, 2020 IL App (3d) 180020, ¶ 31; *People v. Shenault*, 2014 IL App (2d) 130211, ¶ 22.

¶ 24     As noted, defendant's five-minute delay in complying with the officers' orders to exit her vehicle placed them in danger from passing traffic.  She complied only when it became clear that her arrest for resisting or obstructing was imminent and a second officer entered her vehicle to remove her seat belt.  Defendant's actions went beyond a mere brief argument about the validity of the officer's actions.  Accordingly, the evidence was sufficient to support her conviction of obstructing a peace officer.

¶ 25                                III. CONCLUSION

¶ 26    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 27    Affirmed.