(No. 42131.—

THE CITY OF CHICAGO, Appellee, *vs.* CAROL JACOBS, Appellant.

*Opinion filed September 29, 1970.*

BEARDSLEY RUML II, of Chicago, (DAVID A. GOLDBERG, of counsel,) for appellant.

RICHARD L. CURRY, Acting Corporation Counsel, of Chicago, (MARVIN E. ASPEN and JOHN J. GEORGE, Assistant Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

The defendant, Carol Jacobs, was found guilty after a bench trial of disorderly conduct in violation of section 193

—1(d) of the Municipal Code of the City of Chicago and fined $90.00. Contending that constitutional questions are involved she has appealed directly to this court.

On April 27, 1968, a group of demonstrators, apparently several thousand in number, assembled to protest our involvement in Viet Nam at the Civic Center Plaza in Chicago. The plaza itself had been enclosed and set off by a plastic cord which stretched around the plaza on all sides. This cord had been cut and was lying at the feet of the demonstrators who encircled the area at the time of the events leading to the defendant's arrest. Following the line formed by the cord, approximately 100 to 200 Chicago police officers had taken stations on the perimeter of the plaza, facing the crowd. At trial it was testified that the intervals between these officers varied from 15 to 40 feet. They had received orders to keep the crowd from entering the area of the plaza that had been set off by the cord. It appears from the record that the order to bar the crowd from the central area of this section was given to protect caulking repairs which had been performed earlier in the day.

The arresting officer, Thomas Keeves, was detailed at the southeast corner of the plaza. He testified that he was standing as a member of the police line facing the east and that the defendant, facing the west, was standing face to face with him. Officer Keeves for a reason not appearing in the record, backed up, turned about and began to walk to the west. When he turned about, a portion of the crowd which had been facing him, crossed over the rope and walked after him. The other officers of the police line did not move but remained at their stations. Officer Keeves said that after moving about 25 feet, he halted and requested the persons who had followed him to move back to the line. Most of them complied with his request. The defendant and her husband were among those who did not return to the line. Officer Keeves testified he then specifically asked the de-

fendant and her husband to move back and when they failed to comply he told them: "If you don't move back I will have to place you under arrest." The defendant refused to move and she was placed under arrest by Officer Keeves.

So far as it is here pertinent, section 193 of the Municipal Code of the City of Chicago provides: "A person commits disorderly conduct when he knowingly: * * * (d) Fails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm * * *."

The argument of the defendant on appeal is that the trial court's finding of guilty was a denial of due process since there was no evidence that the defendant's conduct was in violation of the ordinance. Specifically, she says that there is no evidence in the record that "three or more persons [were] committing acts of disorderly conduct in the immediate vicinity * * *."

But the record does show such evidence. The defendant concedes that the police were acting lawfully in barring the demonstrators from the plaza to protect the recently completed caulking. It is also conceded that the prohibition against crossing the police line was made clear to the demonstrators. It further is undisputed that as the defendant walked beyond the police line a large number of other demonstrators also moved beyond the line onto the plaza. The record shows that at least one officer in the immediate vicinity of the defendant told that part of the crowd that there had been caulking repairs and not to move across the police line. If persons did they would be arrested, he said. At the time the defendant refused to move back and was arrested, other demonstrators in the crowd who had crossed over the police line were also arrested.

Thus, numbers, admittedly three or more, of the several

thousands of demonstrators had crossed the police line onto the prohibited area of the plaza in violation of the police order. This resulted in arrests of some of the demonstrators, including the defendant. The situation at the moment was one dangerously close to greater disorder. The evidence sufficiently showed that three or more persons were engaging in acts of disorderly conduct in the immediate vicinity of the defendant, which acts were likely to cause substantial harm, serious inconvenience, annoyance or alarm when the defendant refused to obey Officer Keeves's order. See *City of Chicago* v. *Fort, ante,* p. 12.

The defendant argues, too, that Officer Keeves's conduct in turning about and walking away was implied authority for the defendant and the part of the crowd in that area to follow him, since he constituted the police line. *Cox* v. *Louisiana,* 379 U.S. 559, 13 L. Ed. 2d 487, 85 S. Ct. 476 and *Raley* v. *Ohio,* 360 U.S. 423, 3 L. Ed. 2d 1344, 79 S. Ct. 1257, are cited in support of the argument that the officer's activity constituted "indefensible entrapment" which rendered the ordinance unconstitutional as applied.

We are unpersuaded by the contention. It appears that Officer Keeves alone, of the 100 to 200 police officers who were stationed along the perimeter of the plaza, moved from the line of officers to the plaza. The defendant candidly acknowledges that the original prohibition against crossing the line was made clear. The argument that the conduct of this single officer was an implied permission for the defendant to go upon the plaza is under the circumstances fanciful. *Cf. City of Chicago* v. *Hill,* 40 Ill.2d 135.

We must reject the defendant's reasoning that Officer Keeves's direction to her to move back was arbitrary and unreasonable because she was not given an explanation or reason for the order. It is her position that without this, the order could not be lawful as she was engaged in activity which was on its face protected under the first amendment to the Federal constitution. Citing *City of Chicago* v. *Greg-*

*ory,* 39 Ill.2d 47 and Justice Black's dissenting opinion in *Feiner* v. *New York,* 340 U.S. 315, 95 L. Ed. 295, she says that before the police could require her to cease the activity due process required that she have been informed why her activity was no longer lawful and protected. However, there is an assumption, erroneous, as we have declared above, by the defendant that her activity at the time of her arrest was protected under the first amendment. Her conduct when interrupted by her arrest was unlawful and there was no justification, as she claims, in her regarding the order of the officer as illegal.

It is argued too by the defendant that her failure to comply with Officer Keeves's order to move back was not a voluntary failure because she was unable to move back because of the crowd. Her testimony in this regard posed a question of credibility and was for the trial court to resolve. See *People* v. *Mann,* 27 Ill.2d 135, 139; *People* v. *Webster,* 17 Ill.2d 177, 180.

Another contention is that the trial court judge erroneously believed that it was not necessary for the order given by Officer Keeves to have been a lawful one for the defendant to have been guilty of violating the ordinance. However, we consider after examining the record that the comments of the court, to the effect that it was not necessary that the officer's order have been lawful for the defendant to have been guilty, related to a charge of resisting arrest which was subsequently dismissed. In any event, the order of the officer was lawful under the circumstances here.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*