(No. 41945.—

THE CITY OF CHICAGO, Appellee, *vs.* JOHNNY LEE FORT
*et al.,* Appellants.

*Opinion filed May 27, 1970.—Rehearing allowed October 6, 1970.*

MARSHALL PATNER, of Patner & Karaganis, and PAUL
E. GOLDSTEIN, of Ross, Hardies, O'Keefe, Babcock, Mc-
Dougald & Parsons, both of Chicago, for appellants.

RICHARD L. CURRY, Acting Corporation Counsel, of
Chicago, (MARVIN E. ASPEN and OLIVER D. FERGUSON,
Assistants Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendants, Johnny Lee Fort, Edward Bey, Andrew McChristian, Jeff Fort, and Beuna Bey, were charged with disorderly conduct in violation of section 193—1(d) of the Municipal Code of the City of Chicago. They waived a trial by jury and on their trial before the court they offered no evidence, and moved for a "directed verdict" of acquittal at the close of the City's case. The trial judge denied the motion and fined each defendant $50 plus costs of $5. Constitutional questions are involved, and the defendants have appealed directly to this court.

Section 193—1 provides in pertinent part: "A person commits disorderly conduct when he knowingly: * * * (d) Fails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm; * * *."

Officer Ronald Smith of the Chicago Police Department testified that while he and his partners were driving their squad car east on 67th Street in the City of Chicago after midnight on July 29, 1968, they saw a "large crowd" of young men and women on the sidewalk between 1522 and 1527 East 67th Street. "Several fellows" were sitting or lying on top of parked cars in a city parking lot adjacent to 1525-1527 East 67th Street, and 15 or 20 people were standing in such a way as to block the entrances to a tavern, a laundromat, and a poolroom, and to cause other persons to have to walk in the street in order to pass. The officers stopped their car, and Officer Smith ascertained from the men that the parked cars upon which they were lying did not belong to them. He testified that he ordered the crowd to disperse and that he "told them the next time we come through we're going to come through with a wagon." As

the squad car pulled away east on 67th Street, Smith observed that the crowd "began to walk slowly in one direction or another, but  *  *  *  I could look back and see them coming back, sitting up on the cars and loitering around the laundromat and poolroom and the tavern."

The officers drove east for several blocks, turned around, and as they were driving west again on 67th Street, they noticed that Theotis Clark, who was wanted for armed robbery and aggravated battery, walked up and started talking to some of the defendants. The officers called for a patrol wagon to stand by in the immediate vicinity, drove to the scene and "gathered all the people that we could up," including Theotis Clark. The five defendants in this case were informed by the officers that "this was the second time tonight we had been there within the hour and they were all under arrest for disorderly conduct and refusing to obey a police order."

The defendants contend that the City presented insufficient evidence to support a conviction under section 193—1(d). But the uncontroverted testimony establishes that three or more persons were engaged in disorderly conduct in the immediate vicinity of the arrests, which acts were likely to cause serious inconvenience, annoyance or alarm, that a person known to be a police officer ordered the group to disperse, and that the defendants failed to obey that order. The term "disorderly conduct" as used in subsection 193—1(d) of the Chicago Municipal Code incorporates by reference the elements of disorderly conduct contained in subsection 193—1(a), which states that a person commits disorderly conduct when he knowingly "does any act in such unreasonable manner as to provoke, make or aid in making a breach of peace;  *  *  *."

The undisputed conduct of the defendants was clearly unlawful. They were arrested at 1:40 A.M. Some of the group were blocking public passage on a sidewalk so that pedestrians were forced to risk the hazards involved in

walking in the street; others were sitting and lying on parked automobiles that did not belong to them. They refused to disperse when directed to do so. Contrary to the defendants' contention, there is no suggestion in the record that when they were arrested for failure to obey the police order most of the persons originally assembled had already dispersed; Officer Smith testified that "we * * * gathered all the people that we could up."

The defendants next argue that "the ordinance permits convictions without any unlawful conduct and in so doing denies a person so charged * * * due process of law." But such an argument overlooks the fact that refusal to obey a police order to disperse where three or more persons are committing acts of disorderly conduct in the immediate vicinity is itself unlawful conduct within the ordinance. In order to prevent public disturbances from escalating it is often necessary for the police to order persons congregated in the immediate vicinity of a disorder to disperse. We see no constitutional infirmity in a narrowly drawn ordinance which permits the police to arrest those who fail to comply with such an order, whether they are spectators or participants in the underlying disturbance.

Courts in other jurisdictions have uniformly upheld such enactments against constitutional challenge. (See, *e.g.*, *Feeley* v. *District of Columbia* (D.C. Ct. App. 1966), 220 A. 2d 325, vacated on other grounds, (D.C. cir. 1967), 387 F.2d 216; *Drews* v. *State* (1961), 224 Md. 186, 167 A. 2d 341, vacated and remanded on other grounds (1964), 378 U.S. 547, 12 L. Ed. 2d 1032, 84 S. Ct. 1900, reaffirmed on remand (1964), 236 Md. 349, 204 A. 2d 64, appeal dismissed and *cert.* denied (1965), 381 U.S. 421, 14 L. Ed. 2d 693, 85 S. Ct. 1576; *People* v. *Galpern* (1932), 259 N.Y. 279, 181 N.E. 572; *cf. People* v. *Carcel* (1957), 3 N.Y.2d 327, 165 N.Y.S. 2d 113, 144 N.E.2d 81; see also cases cited 65 A.L.R. 2d 1152.) The Model Penal Code contains a similar provision (Model Penal Code, sec. 250.1 (2), Tent.

Draft No. 13, 1961). And quite recently the United States Supreme Court, in reversing the convictions of anti-war protestors which may have resulted because the protestors' views on the Vietnam war were offensive to some bystanders, pointed out: "On this record, if the jury believed the State's evidence, petitioners' convictions could constitutionally have rested on a finding that they sat or lay across a public sidewalk with the intent of fully blocking passage along it, or that they refused to obey police commands to stop obstructing the sidewalk in this manner and move on. See, *e.g., Cox* v. *Louisiana* (*I*), at 544-555; *Shutlesworth* v. *Birmingham,* 382 U.S. 87, 90-91 (1965)." *Bachellar* v. *Maryland* (1970), 397 U.S. 564, 25 L. Ed. 2d 570, 90 S. Ct. 1312.

The defendants further argue that the ordinance is unconstitutionally vague because "it fails to specify what conduct is proscribed and it leaves discretion in the police as to what constitutes disorderly conduct." In terms similar to section 193—1(a) of the Chicago Municipal Code, the Illinois disorderly conduct statute provides that "A person commits disorderly conduct when he knowingly: (a) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace, * * *." (Ill. Rev. Stat. 1967, ch. 38, par. 26—1.) In *People* v. *Raby,* 40 Ill.2d 392, we sustained that provision against an attack like that made here, saying: "It is true that section 26—1(a) does not attempt to particularize all of the myriad kinds of conduct that may fall within the statute. The legislature deliberately chose to frame the provision in general terms, prompted by the futility of an effort to anticipate and enumerate all of the methods of disrupting public order that fertile minds might devise." (40 Ill.2d at 396; see also *United States* v. *Woodard* (7th cir. 1967), 376 F.2d 136, 140.) In our opinion the ordinance defines boundaries sufficiently distinct for us to review the reasonableness of the peace officer's on-the-spot decision that three

or more people in the immediate vicinity were engaged in acts of disorderly conduct.

The defendants also argue that the ordinance is overly broad because it potentially infringes upon conduct protected by the first amendment to the United States constitution. While it is possible to imagine extreme circumstances in which the ordinance might be unconstitutionally applied, we prefer to deal with those situations if and when they arise. (See *People* v. *Raby* (1968), 40 Ill.2d 392, 397-398; *Wadlington* v. *Mindes* (1970), 45 Ill.2d 447.) This is not a case like *Feiner* v. *New York* (1951), 340 U.S. 315, 95 L. Ed. 295, 71 S. Ct. 303, *Brown* v. *Louisiana* (1966), 383 U.S. 131, 15 L. Ed. 2d 637, 86 S. Ct. 719, or *Cox* v. *Louisiana* (1965), 379 U.S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 453, where the police dispersed peaceful demonstrators engaged in the lawful exercise of first amendment rights because of the violent reaction which the demonstrators engendered in a hostile audience. In this case there is no suggestion that first amendment rights were being exercised by the defendants. The group with which the defendants congregated had no constitutionally protected right to sit upon cars that they did not own or assemble in a way which would block the free flow of pedestrian traffic on the public sidewalks. See *Cox* v. *Louisiana* (1965), 379 U.S. 536, 544, 13 L. Ed. 2d 471, 85 S. Ct. 453; *People* v. *Raby*, 40 Ill.2d 392.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*