THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROSA GONZALEZ, Defendant-Appellant.—THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* ROSA GONZALEZ, Defendant-Appellant.

First District (4th Division)   Nos. 62272, 62273 cons.

Opinion filed November 10, 1976.

James J. Doherty, Public Defender, of Chicago (James Young and Judith A. Stewart, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Paul Benjamin Linton, Assistant State's Attorneys, of counsel), for the People.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Roseann Oliver, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Rosa Gonzalez, the defendant, was placed under arrest on June 3, 1973. She was charged with the offenses of resisting arrest (Ill. Rev. Stat. 1973, ch. 38, par. 31—1), the commission of a battery (Ill. Rev. Stat. 1973, ch. 38, par. 12—3), and with disorderly conduct under section 193—1(d) of the Municipal Code of the City of Chicago. On September 30, 1974, in the Circuit Court of Cook County, Illinois, Municipal Department, First District, a jury found Rosa Gonzalez guilty of both resisting arrest and disorderly conduct. She was found not guilty of battery and was discharged as to that offense. On October 1, 1974, she was sentenced to serve 2 years of probation with the first 100 days in the Cook County Jail, and fined $100 and no costs. This sentence was subsequently modified and reduced on January 17, 1975, to 2 years of probation with the first 60 days to be served in the House of Correction and a fine of $1, suspended. The defendant's post-trial motion for a new trial was denied and she appeals.

The issues presented for review are: (1) whether the evidence entertained by the trial court supports the jury verdict that the defendant was guilty of disorderly conduct, (2) whether the defendant was proved guilty beyond a reasonable doubt of resisting arrest, and (3) whether the defendant's sentence on the resisting arrest charge of 60 days' imprisonment as a condition of probation was improper.

The facts involved are as follows. In the early morning hours of Sunday, June 3, 1973, at approximately 6:30 a.m., Police Officers Cristoe and Logan responded to a radio call of a disturbance at 1130 North Richmond in the city of Chicago. The two officers were transporting an alleged rape victim and her mother in their squad car. The officers decided to investigate the disturbance since they were in the immediate vicinity. Officer Cristoe testified that when he and Officer Logan arrived at the scene there were 8 to 10 people standing in and about the street. No other police vehicles were present. The officers stopped and exited the squad car in order to investigate further. It was later determined that the residents of North Richmond were present on the street at that time due to a violent domestic altercation that had taken place in the neighborhood less than an hour earlier. When the officers left the squad car, a large

German shepherd dog came running at them, barking and growling. The officers drew their revolvers, believing that the animal would do them harm, and lowered the guns to their sides. Cristoe shouted at the crowd for someone to come and restrain the animal, assuming that the dog's owner was present. The defendant then knelt and grabbed the growling dog, holding it firmly by the neck. The officers then holstered their revolvers; however, the defendant began screaming and directing profanities towards them. Officer Cristoe requested that she remove the animal but the defendant continued to shout, repeating, "If you're going to shoot the dog you'll have to shoot me." According to Officer Cristoe, the defendant was growing louder and continued to "rant and rave" even after someone else had come out and led the dog away. Both officers attempted to calm the defendant as the people on the street began to gather around. The two officers attempted to explain to the people what they were doing there and what was occurring. Finally, they advised the defendant that they would arrest her if she would not quiet herself. The defendant continued her behavior, saying, "You are not going to arrest me" and, "No fucking pig is going to arrest me." The defendant was then placed under arrest. After she had been placed under arrest, the defendant proceeded to walk away from the officers. Cristoe grabbed her by the arm and the defendant attempted to free herself. Officer Logan then grabbed her other arm. As they endeavored to handcuff the defendant, she began kicking and scratching. The defendant kicked Officer Logan and scratched his hand. She was then handcuffed and led to the squad car. It was necessary to wait for a squadrol since the car was already occupied. At this point, the defendant bent over the trunk of the squad car and began to beat her head upon the car, simultaneously shouting that the police were beating her. The defendant continued to shout and protest her arrest at the police station.

Conflicting evidence was produced during the trial by witnesses for the defense. The defendant testified that she was awakened that morning by the noise produced by a domestic quarrel unusually violent in nature, and like her neighbors she went outside to see what was causing the disturbance. She stated that there were 25 to 40 people still in the street when Officers Cristoe and Logan arrived. This estimation was generally corroborated by the other defense witnesses. According to the defendant, she already had her dog by the neck when the officers approached her and asked, "Is that Frank's dog?" Defendant asserts that the question was in reference to her son, Frank Gonzalez, with whom the officers were familiar. Cristoe then said, "It's about time we shoot him," referring to the dog. The officers then jumped out of the squad car and grabbed the defendant by her hair, pulled her away from the dog and handcuffed her. After "beating her up," the officers put her in a squadrol and she was taken

to a police station. The defendant denied that she at any time used profane language, kicked or scratched an officer, voluntarily beat her head against the squad car, or that she was at any time requested by an officer to leave the street. She admits struggling when handcuffed because the cuffs were extremely tight. The defendant stated that her dog was very old, that he was gentle and frequently played with children in the neighborhood, and that he had barked but never growled at the policemen.

The defendant's testimony was substantially corroborated by the other defense witnesses. Janice Smith, a neighbor of Ms. Gonzalez, testified that the defendant had the dog by the neck and was pulling him across the street when the officers jumped out of the squad car and pulled their guns. Yolanda Hinojosa, another neighbor, testified that the defendant already had the dog by the neck when the officers jumped out of the squad car. However, James Futia, a friend of the Gonzalez family for 14 years, testified that the officers jumped out of the squad car, aimed guns at the dog, and that the defendant then ran to the dog and grabbed him by the neck. In further contrast to the testimony of the other defense witnesses, Futia testified that from 8 to 10 minutes elapsed between the time the officers exited the car and the time they grabbed the defendant.

The testimony reveals that Janice Smith was standing at least 25 feet away from the officers and the defendant at the time of the occurrence. People were "all over the place" and moving about at this time. Ms. Smith was standing in her yard conversing with a neighbor when the officers arrived and parked in the middle of the street, but maintained that she in fact heard the entire verbal exchange that took place between the officers and the defendant. Yolanda Hinojosa stated that a number of people were standing in the street between her, the officers and the defendant, and that some people were shouting. Ms. Hinojosa could not hear everything that was said, but only what the defendant said.

The record reveals that the defendant was taken from the police station to St. Mary of Nazareth Hospital for emergency treatment. She was treated for scratches on her wrists and was released from police custody that evening. The following day a friend took pictures of the defendant to establish her physical condition. These pictures were admitted into evidence showing a mark on her right biceps, bruises on her back and marks on her wrists. Officer Cristoe testified that at the time of her arrest the defendant was in good physical condition and he did not notice any bruises on her person.

Firstly, the defendant maintains that the evidence heard at trial was insufficient to support the jury's conviction of the defendant for disorderly conduct. Section 193—1(d) of the Municipal Code of the City of Chicago provides as follows:

"A person commits disorderly conduct when he knowingly:
* * *

(d) Fails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm; * * *."

Defendant argues that there was no evidence that three or more persons in the immediate vicinity were engaging in conduct proscribed by the ordinance, and thus the City failed to prove an essential element of the offense. The defendant cites *People v. Lott* (1962), 24 Ill. 2d 188, 181 N.E.2d 112, as holding that the law places upon the city the burden of proving each and every essential element of an offense, and where an element is not proved the conviction must be reversed. We agree that the opinion in *Lott* provides an accurate statement of the law. However, we do not agree that the City failed to establish an essential element of the offense of disorderly conduct in the case at bar.

The credibility of witnesses as well as the weight to be awarded their testimony are matters for resolution by the trier of fact. (*City of Chicago v. Boyles* (1971), 132 Ill. App. 2d 509, 513, 270 N.E.2d 193; *People v. Oparka* (1967), 85 Ill. App. 2d 33, 39, 228 N.E.2d 291.) A reviewing court in determining whether or not the finding of the trier of fact was clearly erroneous or abusive must consider whether that finding was reasonable. To be considered is whether from the evidence the trier of fact could reasonably have found the defendant guilty of the offense charged. *City of Chicago v. Boyles* (1971), 132 Ill. App. 2d 509, 512, 270 N.E.2d 193.

■■ In the instant case, the question becomes whether or not the circumstances surrounding the arrest of the defendant were within the purview of conduct proscribed by the ordinance. The ordinance makes specific reference to that conduct likely to cause "harm or serious inconvenience, annoyance or alarm." The record established that at no time did anyone in the crowd attempt to intervene between the uniformed officers and the defendant. However, people were milling around in and on both sides of the street and potentially blocking traffic. Defense witnesses testified that there were 25 to 40 people in the street, and that some persons were shouting. When the officers endeavored to quiet the defendant, the crowd began to gather around them. Officer Cristoe testified to the effect that he believed the defendant's outbursts and behavior were at some points directed toward the crowd. Under these circumstances the officers could have reasonably concluded that the activity of the crowd created a potentially threatening or alarming situation, caused inconvenience and presented a menace to their safety. In view of the evidence, the trier of fact reasonably found that defendant's

failure to obey the officer's order to disperse was a violation of section 193—1(d) of the Municipal Code. The trier of fact, in determining the credibility of the witnesses and the weight to be given their respective testimony, has the opportunity as well as the duty to carefully observe their manner and demeanor. We find that the evidence presented on behalf of the City was sufficient to sustain a verdict of guilty.

■■ Secondly, the defendant contends that she was not proved guilty beyond a reasonable doubt of resisting arrest. We find that the rule in *Oparka* applies to this contention advanced by the defendant.

The defendant argues that the several defense witnesses gave testimony directly adverse to the testimony of the State's witness, Officer Cristoe. Therefore, according to the defendant, the verdict of the jury was unreasonable since the State's witness was outnumbered. However, the law was accurately stated in *Oparka* to be as follows:

> "The question of the accuracy of a description given by a witness connecting a defendant with a crime and the weight to be given thereto are matters to be determined by the trier of fact, and a reviewing court will not interfere with the determination unless it is clearly or manifestly erroneous." *People v. Oparka* (1967), 85 Ill. App. 2d 33, 39, 228 N.E.2d 291.

In our application of the rule in *Oparka* to the instant case, we find that the evidence presented by the State was sufficient to sustain a verdict of guilty.

Finally, the defendant asserts that the sentence on the State charge of 60 days' imprisonment as a condition of probation was improper and that the 60-day sentence must be vacated.

The facts reveal that the relevant statute in effect at the time when the offense occurred, provided that a defendant could not receive a term of imprisonment, other than periodic imprisonment, as a condition of probation. Section 5—6—3(d) provides as follows:

> "(d) The court shall not require as a condition of the sentence of probation or conditional discharge that the offender be committed to a period of imprisonment except under Article 7." (Ill. Ann. Stat., ch. 38, par. 1005—6—3(d) (Smith-Hurd 1973).)

The above provision was later amended effective July 1, 1974, to allow as a condition of probation a term of imprisonment not to exceed 6 months. The amendment provides as follows:

> "(d) The court shall not require as a condition of the sentence of probation or conditional discharge that the offender be committed to a period of imprisonment in excess of 6 months." Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—3(d).

The defendant was sentenced on October 1, 1974. That sentence was amended on January 17, 1975, providing for 60 days to be served in the

844

House of Correction as a condition of defendant's sentence to 2 years of probation. The defendant maintains that she should be given the benefit of the law in effect at the time when the offense was committed.

■■ It has been consistently held that a defendant shall be sentenced according to the law as it stood at the time of the commission of the offense. (*People v. Grant* (1974), 57 Ill. 2d 264, 271, 312 N.E.2d 276; *People v. James* (1970), 46 Ill. 2d 71, 73, 263 N.E.2d 5.) Although a defendant may be entitled to elect to receive retroactive benefit under a new law where that law would result in a lesser punishment (*People v. James* (1970), 46 Ill. 2d 71, 73, 263 N.E.2d 5), a criminal defendant has the right to receive sentence and to be punished under the law as it existed at the time of the offense. We therefore find that the 60-day sentence was improper as a condition of probation.

In accordance with the above findings, the convictions of resisting arrest and disorderly conduct are affirmed; the 60-day sentence as part of the probation is vacated.

Affirmed as modified.

DIERINGER and BURMAN, JJ., concur.