# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-4318

DENNIS E. JONES-EL, et al.,

*Plaintiffs-Appellees,*

v.

GERALD A. BERGE, MATTHEW J. FRANK,
and JON E. LITSCHER,

*Defendants-Appellants.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 00 C 421—**Barbara B. Crabb**, *Chief Judge.*

———————

ARGUED JUNE 1, 2004—DECIDED JULY 2, 2004

———————

Before EASTERBROOK, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* This appeal arises out of an action filed in 2000 by two prisoners confined at the Supermax Correctional Institution in Boscobel, Wisconsin (this facility was recently renamed the Wisconsin Secure Program Facility, but for the sake of continuity, we will refer to the prison as "Supermax"). In their conditions of confinement suit, the plaintiffs asserted that they were subjected to extreme temperatures in violation of the Eighth Amendment, in addition to other claims. After a plaintiff class was

certified, the district court granted a preliminary injunction requiring, in part, that certain inmates particularly suscep- tible to elevated temperatures be immediately removed from Supermax. *Jones'El v. Berge*, 164 F. Supp. 2d 1096 (W.D. Wis. 2001) ("*Jones'El I*"). Prior to trial on January 24, 2002, the parties entered into a consent decree. Among other concessions, the Wisconsin Department of Corrections ("DOC") agreed to investigate and implement a means of cooling the cells during summer heat waves. The agreement also stated that the district court would retain jurisdiction to enforce its terms and that it was consistent with the requirements of the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626. On June 24, 2002, the district court approved the agreement.

Then, on October 10, 2003, the plaintiffs moved to enforce various provisions of the consent decree, including the term requiring the DOC to implement a means of cooling the cells. During the November 24, 2003 hearing on this motion, the defendants admitted that the only practical way to cool the cells was to install air conditioning. Conse- quently, the district court ordered the defendants to take immediate steps to air condition the cells at Supermax ("November order" or "enforcement order"). The defendants have appealed that award of relief by the district court, and, as of March 11, 2004, the November order has been stayed pending the disposition of this appeal. For the following reasons, we affirm the district court's enforcement order.

## I. Analysis

First, we must address whether jurisdiction lies to con- sider this appeal. Under 28 U.S.C. § 1291, we have jurisdic- tion over appeals from all final decisions of the district courts. The consent decree itself was a final decision for purposes of § 1291, even though, as a complex equitable decree, it lacks the trappings of a readily-identifiable-as-

final money judgment. As a result, the district court's enforcement order, the subject of this appeal, is properly conceived of as a postjudgment order. We treat a postjudgment proceeding as if it were a freestanding lawsuit and attempt to identify the final decision in that proceeding. *See Alliance to End Repression v. City of Chicago*, 356 F.3d 767, 773 (7th Cir. 2004) (citing *Bogard v. Wright*, 159 F.3d 1060, 1062-63 (7th Cir. 1998) (citing cases)); *Gautreaux v. Chicago Hous. Auth.*, 178 F.3d 951, 955-56 (7th Cir. 1999) (citing *Ass'n of Cmty. Orgs. for Reform Now v. Ill. State Bd. of Elections*, 75 F.3d 304, 306 (7th Cir. 1996)). Hence, we find ourselves heading into rocky terrain—where a consent decree serves as the "first" order of the postjudgment controversy, the postjudgment proceedings may not bear sufficient similarities to a freestanding lawsuit to enable easy identification of a plausible counterpart to a final judgment as required under § 1291. *See Bogard*, 159 F.3d at 1062-63. Because the finality question in the context of postjudgment proceedings is such a tough one, instead of attempting to conquer such terrain, we assume the November order was non-final and take the plainer path—28 U.S.C. § 1292(a)(1).

Under § 1292(a)(1), we have jurisdiction over appeals from interlocutory orders of the district courts granting injunctions. An order—including a postjudgment order—is properly characterized as an "injunction" when it substantially and obviously alters the parties' pre-existing legal relationship. *Gautreaux*, 178 F.3d at 958 (citing *Bogard*, 159 F.3d at 1064; *Motorola, Inc. v. Computer Displays Int'l, Inc.*, 739 F.2d 1149, 1155 (7th Cir. 1984)). Even though an interlocutory order may not explicitly grant an injunction, if its consequences may cause a party irreparable harm, then it likely substantially altered the legal relationship of the parties and immediate appealability is appropriate. *See Heartwood, Inc. v. U.S. Forest Serv.*, 316 F.3d 694, 698 (7th Cir. 2003) (citing *Carson v. Am. Brands, Inc.*, 450 U.S. 79,

84 (1981)). Put differently, an unappealable order is one that interprets or clarifies a prior order and does not create new rights or obligations independently enforceable through a contempt action.

Applying this standard to the November order, we conclude that it is an appealable grant of a "fresh" injunction, and not simply an interpretation of the consent decree. The November order required the DOC to immediately take steps to air condition the cells at Supermax and set a deadline for completion of the air conditioning project: the first heat of 2004.[1] Assuming *arguendo* that the order is in error, without an immediate appeal, the defendants would have to comply with the order and incur substantial costs, and would therefore suffer serious irreparable harm.

Moreover, it is impossible to conceive that, absent the enforcement order, the plaintiffs could have successfully pursued a motion for contempt of the decree based upon the defendants' failure to air condition the cells at Supermax. The decree included no provision guaranteeing air conditioning, it only stated that the defendants would implement a means of cooling the cells during summer heat waves. The plaintiffs assert that because the defendants admitted at the pre-order hearing that the only practical means of cooling the cells is air conditioning, the consent decree *ipso facto* required air conditioning and the enforcement order should properly be construed as an interpretation of the

---

[1] In fact, the district court denied the defendants' motion to stay the enforcement order on December 23, 2003. The defendants were able to discontinue the air conditioning project only because this court on March 11, 2004 granted their motion to stay the order pending disposition of the appeal. The record reveals that approximately one-third of the project has been completed (although much to our vexation, the defendants were not able to identify at oral argument what exact improvements or construction have thus far been completed), at a cost of about $250,000.

decree and not as an injunction. This circular logic is unavailing. It is still the case that, absent the November order, it would not be possible to hold the DOC in contempt of the original consent decree for failing to install air conditioning.[2]

The enforcement order substantially and obviously changed the legal relationship of the parties by specifically requiring the installation of air conditioning, evidenced by the irreparable harm the defendants could suffer absent the availability of an immediate appeal. Therefore, we have jurisdiction under § 1292(a)(1).

Next, we briefly address the defendants' assertions that the district court's enforcement order is invalid. All these arguments allege that the November order fails to comply with the requirements for prospective relief under the PLRA. Specifically, 18 U.S.C. § 3626(a)(1) mandates that prospective relief must be narrowly drawn, extend no further than necessary to correct the violation of the federal right, and must be the least intrusive means necessary to correct the violation. Problematically, the defendants failed to make any of their highly fact-bound arguments as to why the order would violate the PLRA in their briefing to the district court or at the November 24, 2003 hearing on the issue. This failure not only deprived the plaintiffs of a meaningful opportunity to respond (and concomitantly waived these arguments for the purposes of appeal, *see, e.g.*, *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.

---

[2] Following the defendants' admission at the November 24, 2003 hearing, the plaintiffs certainly could have abandoned their motion to compel enforcement with respect to the air conditioning and instead filed a contempt action against the state for violating the decree based upon that admission. But this never came to pass. The plaintiffs continued to press their enforcement motion and obtained the desired—and, despite their protestations to the contrary, appealable—enforcement order.

1991)), but also reveals that this appeal of the enforcement order is not the proper mechanism for the particular challenges the defendants wish to raise.

The enforcement of a valid consent decree is not the kind of "prospective relief" considered by § 3626(a). *See, e.g.*, *Hallett v. Morgan*, 296 F.3d 732, 743 (9th Cir. 2002) (citing *Essex Co. Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 445, 462 (D.N.J. 1998)). So long as the underlying consent decree remains valid—and the defendants here have not (yet) made a § 3626(b) motion to terminate or modify the decree—the district court must be able to enforce it. *Id.* The district court's enforcement order on its face is valid, and the defendants offer no proper argument (i.e., one that does not rest upon the PLRA) to the contrary. Challenges to the appropriateness of the November order requiring the installation of air conditioning based upon the PLRA can only be properly brought as a § 3626(b) motion to terminate or modify the decree. By this route, both parties will be offered an equal opportunity to argue the facts and substantive merits with respect to the consent decree's provision requiring the cooling of the cells at Supermax.

Before concluding, we must mention a few items regarding the defendants' arguments as to the "practicality" of installing air conditioning. First, the defendants will be hard-pressed to demonstrate that they should not be held to their admission at the November 24, 2003 hearing that air conditioning is the only practical way to cool the cells at Supermax. *See, e.g.*, *Burgin v. Broglin*, 900 F.2d 990, 993 n.3 (7th Cir. 1990). Second and relatedly, at oral argument, the defendants also (and somewhat surprisingly) disclaimed costs as a practical impediment to the installation of the air conditioning. Last, we note that before this court, only one argument as to why air conditioning would not be a practical means to cool the cells at Supermax was offered. Defendants incredibly argued that the air conditioning of cells at Supermax to a balmy temperature between 80 and

84 degrees during summer heat waves would entice inmates at other prisons to attack prison guards and/or other inmates in order to be transferred there. This is despite the fact that Supermax inmates are held in windowless cells for all but four to five hours a week and have almost no human contact. We agree with the district court that this proposition is "dubious in the extreme."

## II. Conclusion

For the foregoing reasons, the November 25, 2003 enforcement order of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*