In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2332

DON GOLDHAMER and ROBIN SHIRMER,

*Plaintiffs-Appellees*,

*v.*

ALFRED NAGODE, *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 5286—**John F. Grady**, *Judge.*

ARGUED APRIL 1, 2010—DECIDED SEPTEMBER 2, 2010

Before EASTERBROOK, *Chief Judge*, and BAUER and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The City of Chicago has enacted an ordinance prohibiting disorderly conduct. One controversial portion of that ordinance makes it a crime for a person to fail to disperse from a group when ordered to do so by a police officer while others are engaging in disorderly conduct nearby: "A person com-

mits disorderly conduct when he knowingly . . . (d) Fails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm . . . ." Chicago Municipal Code § 8-4-010(d). This provision has obvious uses in controlling unruly and potentially dangerous crowds. Yet it also lends itself to overly broad application that can interfere with core First Amendment rights of free speech and assembly. The "three or more persons . . . committing acts of disorderly conduct" could be reacting to (or even attempting to disrupt) the speech of the person arrested for a failure to disperse, so this provision can be applied to impose what amounts to an unconstitutional "heckler's veto" of protected speech. See, *e.g.*, *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134 (1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation.").

In this case, the district court permanently enjoined the city from enforcing the failure-to-disperse provision of section 8-4-010(d), reasoning that it imposes too great a burden on protected free speech and is unconstitutionally vague. The city has appealed. We do not address this provision's constitutionality because we conclude that the plaintiffs lack standing to challenge its facial validity. When these plaintiffs were arrested, according to this record, they were not even arguably violating the failure-to-disperse provision. Nor have they shown a reasonable prospect of future arrest for again violating

that same provision. We recognize that the plaintiffs were arrested for supposedly violating this provision, but the grounds for the arrest were apparently specious. Plaintiffs have ample other remedies available to redress any injury they may have suffered from their arrests, but they do not have standing to challenge the facial validity of the law that was misapplied to them.

**The Plaintiffs and Their Arrest:** In the summer of 2006, plaintiffs Don Goldhamer and Robin Schirmer participated in a peaceful demonstration near a military recruiting booth at the annual Taste of Chicago Festival in downtown Chicago. Plaintiffs and others who opposed military recruitment began handing out flyers and speaking to people near the recruiting booth. Defendant Alfred Nagode, a lieutenant with the Chicago Police Department, and several uniformed patrol officers formed a line between the protestors and the military recruiting booth. Lieutenant Nagode then ordered the protestors to go to a designated protest zone. After some protestors failed to relocate in response to his order, Lieutenant Nagode ordered them to disperse. The plaintiffs apparently failed to heed this order. Both were arrested, transported to a police station, and charged with disorderly conduct for violating section 8-4-010(d).

There is no evidence in this record, however, that plaintiffs or any other people in the immediate vicinity were engaged in conduct recognizable as "disorderly conduct" under the ordinance. See *City of Chicago v. Fort*, 262 N.E.2d 473, 475 (Ill. 1970) (construing "disorderly conduct" to mean an act conducted "in such unreasonable

manner as to provoke, make or aid in making a breach of peace"). Genuine disorderly conduct by at least three persons in the immediate vicinity is an essential foundation for an order to disperse that is itself a prerequisite for an arrest under section 8-4-010(d).

The plaintiffs appeared in state court on the charges against them on several occasions. The state apparently was never prepared to follow through on the prosecution of these arrests. At their final court appearance, the court denied the prosecution's motion for a continuance and dismissed the charges.

**Litigation in the District Court:** Plaintiffs Goldhamer and Shirmer then filed this suit under 42 U.S.C. § 1983 alleging violations of their rights under the First, Fourth, and Fourteenth Amendments of the Constitution and under state law. Plaintiffs alleged in part that section 8-4-010(d) was invalid as applied to their protest activities, and that this provision was facially invalid under the First Amendment and was unconstitutionally vague. In support of their request for an injunction against this provision's enforcement, the plaintiffs stated that they "plan to continue their participation in constitutionally protected political activities and protests and . . . fear repeated disruption of these activities and protests and prosecution for them." Plaintiffs did not allege that they had been threatened with future arrest or prosecution for those activities.

The district court directed the parties to submit cross-motions for summary judgment on the facial validity of the failure-to-disperse provision. The district court

granted summary judgment for the plaintiffs, determining that the failure-to-disperse provision of the ordinance is facially invalid under the First Amendment and unconstitutionally vague. *Goldhamer v. Nagode*, 611 F. Supp. 2d 784 (N.D. Ill. 2009). In a separate order, the court issued a permanent injunction prohibiting the city from enforcing section 8-4-010(d).

**Appellate Jurisdiction:** The district court's orders did not resolve all claims pending before it. Although the plaintiffs later dismissed many of their remaining claims with prejudice pursuant to a settlement, the dismissal did not resolve plaintiffs' claim for damages under the count alleging that the failure-to-disperse provision is unconstitutionally vague. Nevertheless, pursuant to 28 U.S.C. § 1292(a)(1), we have jurisdiction to consider this appeal from the grant of permanent injunctive relief. See *Jones-El v. Berge*, 374 F.3d 541, 543-44 (7th Cir. 2004). Because the district court's grant of summary judgment was "inextricably bound" to the injunction, we have limited jurisdiction to review that grant of summary judgment as well, to the extent necessary. See *Coronado v. Valleyview Public School Dist. 365-U*, 537 F.3d 791, 795 (7th Cir. 2008); *Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1124 (7th Cir. 1983) (noting the great caution with which jurisdiction under § 1292(a)(1) is to be exercised).

**Standing to Seek Injunctive Relief:** We may not consider the facial validity of the failure-to-disperse provision unless the plaintiffs had standing to request the injunctive relief. Article III of the United States Con-

stitution limits the jurisdiction of the federal courts to actual "Cases" and "Controversies." Unless a case or controversy is presented, no federal court has the jurisdiction to decide whether a federal, state, or local law is constitutional. *Golden v. Zwickler*, 394 U.S. 103, 110 (1969), quoting *Liverpool, N.Y. & P.S.S. Co. v. Commissioners*, 113 U.S. 33, 39 (1885). Because standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), we must consider this jurisdictional issue even though the parties have not raised it. *E.g.*, *Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 747 (7th Cir. 2007).

We have no doubt that plaintiffs had standing to pursue their claims for damages based on what may well have been unlawful arrests that also interfered with expression protected by the First Amendment. Plaintiffs' standing on those claims, however, does not necessarily carry over to their facial challenge requesting an injunction against any enforcement of the failure-to-disperse provision. A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 185 (2000); accord *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (plaintiff had standing to seek damages but not injunctive relief against abusive police practices). The only slice of this case before us is plaintiffs' request for prospective relief—an injunction against enforcement of the failure-to-disperse provision. To establish their standing to seek that relief, the plaintiffs must show that: (1) they are under threat of an actual and imminent

injury in fact; (2) there is a causal relation between that injury and the conduct to be enjoined; and (3) it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury. *Summers v. Earth Island Institute*, 129 S. Ct. 1142, 1149 (2009); *Lujan*, 504 U.S. at 560-61; *Sierra Club v. Franklin County Power of Illinois, LLC*, 546 F.3d 918, 925 (7th Cir. 2008).

The clearest path to resolution of this case focuses on the third element, the likelihood that the injunction will actually prevent an injury that these plaintiffs reasonably fear they will suffer. This element is missing here because the failure-to-disperse provision clearly did not apply to the plaintiffs' actions, actions that we assume they would like to repeat in the future but for their stated fear of prosecution. No allegations or facts in the record indicate that three or more individuals were committing acts of disorderly conduct in the plaintiffs' immediate vicinity. Their arrests appear to have been baseless, and for that reason, the district court's injunction against enforcement of the provision is unlikely to prevent any injury to these plaintiffs.

The fact that these plaintiffs were actually arrested and prosecuted for violating the failure-to-disperse provision does not by itself show the plaintiffs' standing to seek injunctive relief. We assume that plaintiffs intend, as they say, to continue to participate in demonstrations and other expressions protected by the First Amendment. We understand that they may be worried about a possible repeat of the events of the 2006 Taste of Chicago

Festival. And we recognize that the failure-to-disperse provision can be misused to impose a heckler's veto or otherwise to suppress speech and expressive conduct protected by the First Amendment. The relevant question for our purposes, though, is whether these plaintiffs have sufficient reason to fear such arrest and prosecution as to justify a federal judicial decision on the facial validity of the law.

We conclude that the answer is no. As a general rule, the fact that a person was previously prosecuted for violating a law is insufficient by itself to establish that person's standing to request injunctive relief. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108 (1998) (stating that standing to request injunctive relief is lacking when only past harm is alleged); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."); see also *City of Los Angeles v. Lyons*, 461 U.S. at 111 (finding no standing to request injunctive relief where plaintiff could not show he had reason to expect to be arrested and subjected to controversial chokehold again); *Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (holding that plaintiffs lacked standing to obtain injunctive relief against senior police officials to impose tighter police discipline to prevent harm to civilians).

This is an issue on which courts need to maintain a delicate balance between adequately protecting First Amendment rights and avoiding unnecessary constitu-

tional decisions. A person need not risk arrest before bringing a pre-enforcement challenge under the First Amendment, *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2717 (2010); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974), but to present a justiciable controversy, the person must assert more than a wholly speculative possibility of criminal consequences. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979). A plaintiff must show that she has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder." *Id.* at 298; *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (determining that plaintiffs had standing because they "alleged an actual and well-founded fear that the law will be enforced against them"). "When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt*, 442 U.S. at 298-99, quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971); see *Steffel*, 415 U.S. at 459 (determining that the threat of prosecution was not speculative because the plaintiff had been warned to cease his activities and was threatened with prosecution if he failed to do so).

When a person is considering whether he risks prosecution for future actions, he rarely deals with certainties, but rather a broad spectrum of possibilities derived from a number of unknown variables. This uncertainty is particularly problematic in the realm of free speech,

given the danger that vital protected speech will be chilled due to a reasonable fear of prosecution. See, *e.g.*, *Laird v. Tatum*, 408 U.S. 1, 11 (1972) ("[C]onstitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights."). For that reason, when an ambiguous statute arguably prohibits certain protected speech, a reasonable fear of prosecution can provide standing for a First Amendment challenge. See *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (reversing dismissal for lack of standing where scope of statute was unclear); *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 (7th Cir. 1998) (stating that "a threat of prosecution is credible [under *Babbitt*] when a plaintiff's intended conduct runs afoul of a criminal statute"); *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) ("In the free speech context, [an actual and well-founded] fear of prosecution will only inure if the plaintiff's intended speech arguably falls within the statute's reach.").

In *Majors*, however, we also observed that the plaintiff would have lacked standing for a First Amendment challenge if the statute in question "clearly fails to cover [the plaintiff's] conduct." 317 F.3d at 721. In a later case we affirmed dismissal of a pre-enforcement challenge for lack of standing (the prosecutor had expressed no interest in prosecuting the plaintiff under the statute), and we echoed the point from *Majors*: a plaintiff lacks standing to bring a pre-enforcement challenge if the plaintiff's "conduct was clearly outside the statute's

scope." *Lawson v. Hill*, 368 F.3d 955, 957 (7th Cir. 2004). While it is possible that the plaintiffs "might be prosecuted under a statute the text of which clearly failed to cover [their] conduct," such remote fear does not justify an injunction absent something more than a "nontrivial probability of prosecution." *Id.* at 958.

In a case remarkably similar to this one, the Tenth Circuit struck the right balance in *PeTA v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002), and held that plaintiffs lacked standing to bring a facial challenge to a law that did not apply by its terms to their desired conduct. The Tenth Circuit reached that conclusion even though the plaintiffs had been threatened with arrest by an officer who had received bad legal advice about whether the law applied to the plaintiffs' conduct. In *Rasmussen*, PeTA (People for the Ethical Treatment of Animals) and its members sought money damages and an injunction against the enforcement of a statute forbidding "interfere[nce] with the peaceful conduct of the activities of any school." PeTA members had staged a protest at a junior high school (the school had placed, of all things, a McDonald's flag on its flagpole), but they had dispersed after a police officer threatened to arrest them under the statute. Only after that incident did the parties learn that the statute defined "school" as an "institution of higher education," so that it clearly did not apply to plaintiffs' planned future protests at the junior high school. 298 F.3d at 1201. Because the statute at issue did "not apply to the protests PeTA has conducted and has expressed an intention to conduct in the future," the Tenth Circuit held that PeTA had an insufficient chance

of being injured in the future and therefore lacked standing to request injunctive relief or to mount a facial challenge to the statute's validity. *Id.* at 1203.

*Majors*, *Lawson*, and *Rasmussen* guide our resolution of standing in this case. If we had any indication that the police were even arguably acting within the scope of the failure-to-disperse provision when they arrested plaintiffs, then these plaintiffs could have standing to challenge the facial constitutionality of that provision and to request injunctive relief. Our reading of the provision's language and the reported Illinois cases interpreting it, however, indicates that section 8-4-010(d) cannot fairly be read to prohibit peaceful protests of the sort engaged in by the plaintiffs. The types of conduct previously determined to be within the provision's scope are much different from the conduct at issue in this case. See *City of Chicago v. Weiss*, 281 N.E.2d 310, 316-17 (Ill. 1972) (rocks and firecrackers were being thrown); *City of Chicago v. Greene*, 264 N.E.2d 163, 166 (Ill. 1970) (members of 500-person crowd were hurling objects at police); *City of Chicago v. Jacobs*, 263 N.E.2d 41, 42-43 (Ill. 1970) (during protest involving several thousand demonstrators, defendants crossed police line into prohibited area); *People v. Gonzalez*, 357 N.E.2d 616, 620 (Ill. App. 1976) (crowd surrounded police). Nevertheless, the police arrested these plaintiffs and had them charged with failure to disperse without even arguable probable cause for doing so. There is no indication that three or more persons in the "immediate vicinity" were, in the words of section 8-4-010(d), committing acts of disorderly conduct of any kind, let alone that they were likely

to cause substantial harm or serious inconvenience, annoyance, or alarm. See *Fort*, 262 N.E.2d at 475 (defining "disorderly conduct"). Such a clear misuse of a law does not provide a basis for a federal court to explore that law's facial constitutionality.

Perhaps if we had a record showing a persistent pattern of similar police misconduct, persons intending to engage in protected speech and expression might be able to show that they were entitled to injunctive relief of some kind, if not against all enforcement of the provision then at least against future such misconduct. See, *e.g.*, *Allee v. Medrano*, 416 U.S. 802, 815 (1974) (affirming injunction against pattern of police misconduct aimed at preventing unionization of farm workers). The record before us, however, shows only an isolated misuse of the failure-to-disperse provision. We understand that plaintiffs intend to act in the future as they acted when they were arrested without apparent justification, but they have not presented any evidence sufficient to justify a conclusion that their experience was the result of a Chicago policy or custom of misapplying local ordinances against disfavored speech. These plaintiffs' experience appears, on this record, to be the result of an isolated misuse of the failure-to-disperse provision and indicates that they are not reasonably likely to face a future prosecution if section 8-4-010(d) is enforced according to its terms. As the Supreme Court observed in *Allee*: "Isolated incidents of police misconduct under valid statutes would not, of course, be cause for exercise of a federal court's equitable powers." *Id.*

As a final note, we do not mean to imply that the plaintiffs lack standing to pursue *any* claim in regard to their arrests and prosecution. The police officers apparently had no reason to arrest and charge these plaintiffs, who properly asserted their rights by pursuing damages against the officers and the city for the arrests. Plaintiffs settled those claims on terms that are not part of the record before us. Damages were the remedy sought in *Hartnett v. Schmit*, 501 F. Supp. 1024 (N.D. Ill. 1980), where the plaintiffs had been arrested for a failure to disperse even though it was undisputed that there was no nearby disturbance of any kind. Judge Aspen granted summary judgment for the plaintiffs as to liability and held that the defendant police officers were not entitled to qualified immunity because it was clear that they had arrested the plaintiffs without probable cause. 501 F. Supp. at 1028-29. A claim for money damages, not a request for injunctive relief, is an appropriate and effective method for dealing with isolated circumstances in which police officers arrest civilians who are not even arguably violating the law. See *Lyons*, 461 U.S. at 111 ("The legality of the violence to which Lyons claims he was once subjected is at issue in his suit for damages and can be determined there."); *Rasmussen*, 298 F.3d at 1203 (holding that PeTA had standing to pursue monetary damages despite its lack of standing to pursue prospective relief).[1]

---

[1] Our decision in this case should not be understood to extend to a situation in which police misuse of the failure-to-

(continued...)

Accordingly, we VACATE the district court's order enjoining the enforcement of Chicago Municipal Code § 8-4-010(d) and REMAND this matter for further proceedings consistent with this opinion.

---

[1] (...continued)
disperse law has become so common as to amount to a municipal policy or custom that would subject the city to direct liability under section 1983. See generally *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Plaintiffs in this case settled their *Monell* claim, so we do not address that prospect.